# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

LILA RITA HERNÁNDEZ,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 17-2341 (MEL)

## OPINION AND ORDER

Pending before the court is Lila Rita Hernández's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits. Plaintiff—who applied for disability alleging neck pain, lumbar herniated discs, cramps and numbness in her extremities (mostly her right leg), carpal tunnel syndrome, depression, and anxiety—challenges the administrative law judge's decision with regard to steps two and four of the sequential process.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed an application for Social Security benefits on June 29, 2012, alleging that on November 10, 2008 ("the onset date"), she became unable to work due to disability. Tr. 419.[1] Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. Tr. 26. Prior to becoming unable to work, Plaintiff was a secretary. Tr. 36. The claim was denied on December 28, 2012, and upon reconsideration on October 16, 2013. Tr. 85, 91. Thereafter, Plaintiff requested a hearing, which was held on June 22, 2016 before Administrative Law Judge John Pope (hereafter "the ALJ"). Tr. 44. At the hearing, the ALJ granted Plaintiff's

---

[1] "Tr." refers to the transcript of the record of proceedings.

request to amend her alleged onset date to February 24, 2012. Tr. 80. On January 5, 2017, the ALJ issued a written decision finding that Plaintiff was "not under a disability, as defined in the Social Security Act, from February 24, 2012, through the date last insured." Tr. 17–43. Thereafter, Plaintiff requested review of the ALJ's decision on February 13, 2017. Tr. 17. Plaintiff's request for review was denied by the Appeals Council on October 4, 2017, rendering the ALJ's decision the final decision of the Commissioner of Social Security, subject to judicial review. Tr. 1–9. Plaintiff filed a complaint on December 4, 2017. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 15; 18.

## II. LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

2

Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that the plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether the plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether the plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether the plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether the plaintiff's impairment or impairments prevent her from doing the type of work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that the plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether the plaintiff's RFC, combined with her

age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### III.    THE ALJ'S DETERMINATION

In the case at hand, the ALJ found in step one of the sequential process that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of February 24, 2012 through the date last insured of December 31, 2013. Tr. 26. At step two, the inquiry as to severe impairments resulted in the ALJ determining that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumber spine, and major depression. Tr. 27 (citation omitted). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Id. Next, the ALJ determined that Plaintiff had

> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she could occasionally climb, balance, stoop, kneel, crouch, and crawl, and could perform simple, routine, and repetitive tasks with no more than occasional interactions with co-workers, supervisors, and the general public.

Id. At step four, the ALJ determined that through the date last insured, Plaintiff could not perform any past relevant work. Tr. 36. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience, to a vocational expert. The vocational expert testified, taking all of these factors into account, that an individual would be able to perform the requirements of the following representative occupations: sorter, packer, and assembler. Tr. 37. Because there is work in the national economy that Plaintiff can perform, the ALJ concluded that she is not disabled. Id.

## IV. ANALYSIS

First, Plaintiff challenges the ALJ's decision with regard to step two of the sequential process, arguing that the ALJ erred in finding that her alleged bilateral carpal tunnel syndrome was non-severe. ECF No. 15, at 6. Second, Plaintiff argues that the ALJ erred in not assessing manipulative limitations in the RFC. Id. at 8.

### 1. The ALJ's Step Two Determination

At step two, the ALJ found that Plaintiff's alleged condition of bilateral carpal tunnel syndrome was non-severe. Tr. 27. The Supreme Court has stated that a severe impairment is one that significantly limits a claimant's physical or mental ability to perform basic work activities, regardless of age, education, or experience. Yuckert, 482 U.S. at 141 (quotations omitted). Moreover, the Court has recognized the Commissioner's authority to "place the burden of showing a medically determinable impairment on the claimant." Id. at 146.

The First Circuit has also noted that the step two requirement of "severe" impairment imposes a threshold test designed merely to screen groundless claims. McDonald v. Sec'y of HHS, 795 F.2d 1118, 1123 (1st Cir. 1986). Therefore, an impairment or combination of impairments is not severe when the "medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." Id. at 1124 (quotation omitted).

Here, the ALJ found that the evidence in support of the alleged bilateral carpal tunnel syndrome was insufficient. Plaintiff argues that this was incorrect because there is evidence on the record that she suffers from carpal tunnel syndrome. Specifically, she points to two electromyography/nerve conduction studies (EMGs) and the reports of Dr. Eduardo Caussade

6

(her psychiatrist), Dr. Erika Rivera (a psychiatric consultant), and Dr. Juan Deniz (her neurologist). ECF No. 15, at 6. Plaintiff's argument fails for several reasons.

First, Plaintiff's contention that the evaluations of Dr. Deniz, her treating physician, showed the severity of her bilateral carpal tunnel syndrome falls short. Plaintiff argues that Dr. Deniz described her hand limitations in his August 2012 report and noted her wrist pain in his progress notes. Id. at 6–7. However, the ALJ gave little weight to the opinion of Dr. Deniz and therefore found that it was not controlling. Tr. 35.

The disability determination process generally gives "more weight to medical opinions from [a claimant's] treating sources." 20 C.F.R. § 404.1527(c)(2). However, the ALJ is not required to give controlling weight to the opinions of treating physicians. Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2–3 (1st Cir. 1987); Rivera-Tufino v. Comm'r of Soc. Sec., 731 F. Supp. 2d 210, 216 (D.P.R. 2010). Rather, the ALJ can give less weight to a treating physician's opinion if he has good reason to do so. Pagán-Figueroa v. Comm'r of Soc. Sec., 623 F. Supp. 2d 206, 210–11 (D.P.R. 2009) (citing Carrasco v. Comm'r of Soc. Sec., 528 F. Supp. 2d 17, 25 (D.P.R. 2007)). Specifically, the ALJ may disregard the treating physician's opinion when it is "not supported by medically acceptable clinical laboratory techniques, or [is] otherwise unsupported by the evidence." Sánchez v. Comm'r of Soc. Sec., 270 F. Supp. 2d 218, 221–22 (D.P.R. 2003) (citing Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994)). This remains true regardless of whether the source of the evidence is a non-treating doctor. Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988) (citing Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 130 (1st Cir. 1981)). It follows that "an ALJ must give 'good reasons' for the weight accorded to a treating source's opinion." Polanco–Quiñones

v. Astrue, 477 Fed. Appx. 745, 746 (1st Cir. 2012) (quoting 20 C.F.R. § 404.1527(d)(2)) (emphasis in original).

In the case at bar, the ALJ provided multiple reasons why he gave Dr. Deniz's August 2012 opinion, in which he noted Plaintiff's carpal tunnel syndrome, little weight. A review of the record establishes that the ALJ's reasons are supported by substantial evidence. Dr. Deniz's "opinion [wa]s inconsistent with the conservative medication treatment he ha[d] prescribed." Tr. 35 (citing Tr. 573). Further, his opinion was also inconsistent "with the claimant's acknowledgement of her capacity to lift up to twenty pounds." Id. While Dr. Deniz found that she could not lift more than ten pounds occasionally, Plaintiff testified she could lift up to twenty pounds occasionally. Tr. 100, 71. Lastly, Dr. Deniz's opinion was inconsistent with Plaintiff's "failure to attend physical therapy when recommended in 2013." Tr. 35. The record shows Plaintiff did not attend physical therapy for over two years. Tr. 158, 177. Likewise, Dr. Deniz failed to recommend further evaluation of the condition. As the ALJ specifically noted, Dr. Deniz "did not believe the existence and extent" of the carpal tunnel syndrome "warranted further evaluation by a rheumatologist until 2015." Tr. 35 (citing Tr. 177). Thus, Dr. Deniz's diagnosis of Plaintiff's alleged bilateral carpal tunnel syndrome is not supported by the evidence in the record. Accordingly, it was within the ALJ's discretion to disregard it, or to conclude the non-severe nature of the condition.

Second, Plaintiff's contention that the ALJ misinterpreted the 2004 EMG is also unpersuasive. As the ALJ stated, the EMG testing did not indicate bilateral carpal tunnel syndrome. Tr. 27, 543. Moreover, the ALJ noted there was no "additional evidence demonstrating treatment or further evaluation of the condition." Tr. 27.

Plaintiff argues that Dr. Deniz found that the 2004 EMG indicated that she had bilateral carpal tunnel syndrome. Tr. 568. However, as already stated, the ALJ gave little weight to the opinion of Dr. Deniz in relation to Plaintiff's carpal tunnel syndrome, as it was not supported by the rest of the evidence. Tr. 34–35. Instead, the ALJ gave weight to the opinion of Dr. Benjamín Cortijo and Dr. Eileen Zayas, state agency consultants who evaluated Plaintiff's medical record, including the EMGs, and found that the studies did not support a diagnosis of carpal tunnel syndrome.[2] Tr. 34, 193, 212. As both physicians noted in their reports, the "EMG/NCS studies do not support carpal tunnel syndrome." Tr. 193, 212. Likewise, they noted that the "studies contradict treating source report of thumb muscle weakness and EMG does not support any muscle atrophy as treating source is alleging." Id. As a result, the ALJ did not err in holding that the EMG was insufficient to support the carpal tunnel syndrome.

Third, Plaintiff's reference to several documents from the records of Dr. Caussade and Dr. Rivera and suggestion that these establish that she had severe carpal tunnel syndrome are also unpersuasive. ECF No. 15, at 6. The information in most of the documents seems to initially have been provided by Plaintiff herself, for example, as part of an initial patient interview. More importantly, the focus of these evaluations was Plaintiff's mental health. Therefore, these sources neither evaluated Plaintiff's alleged bilateral carpal tunnel syndrome nor assessed her physical limitations in relation thereto, but only acknowledged Plaintiff's input regarding what she believed to be a condition affecting her mental health. The same reasoning applies to Plaintiff's contention that these sources established that she had residual surgery. Id. As the ALJ noted, "there is no medical evidence demonstrating the claimant underwent a carpal

---

[2] The same reasoning applies to the 2003 EMG that Plaintiff cites; besides, as she has recognized, most of the 2003 evaluation is illegible.

tunnel syndrome release." Tr. 33. Moreover, Plaintiff fails to cite to any document in the record that supports her contention of having gone through residual surgery.

A review of the record demonstrates that substantial evidence supports the ALJ's finding that the alleged bilateral carpal tunnel syndrome was not a determinable impairment. Therefore, the ALJ did not err in concluding that Plaintiff's alleged bilateral carpal tunnel syndrome was non-severe.

### 2. The ALJ's RFC Determination

Plaintiff contends that the ALJ improperly left out manipulative limitations in making his RFC finding due to his conclusion that Plaintiff's bilateral carpal tunnel was non-severe. ECF No. 15, at 8. However, the ALJ was not obligated to include these limitations in the RFC. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record. In so finding, the ALJ noted that "an individual experiencing totally disabling limitations would be expected to have undergone more treatment, seen additional specialists, and/or have had further modifications of her medication regime." Tr. 34. Further, the ALJ gave weight to the opinions of two medical consultants: Dr. Cortijo and Dr. Zayas. Tr. 35. Both Dr. Cortijo and Dr. Zayas found no manipulative limitations based on the nerve simulation data presented by Plaintiff. Tr. 193, 213. Thus, the ALJ's conclusion that Plaintiff had no severe limitations on her ability to work resulting from the bilateral carpal tunnel syndrome is supported by the opinions of two medical experts. See Rodríguez v. Sec'y of Health & Human Servs., 893 F.2d 401, 403 (1st Cir. 1989) (finding that the ALJ did not impermissibly assess RFC himself, but instead relied on the RFC assessment provided by the non-examining medical advisor). Under these circumstances, it

was not unreasonable for the ALJ to exclude manipulative limitations when rendering Plaintiff's RFC.

**V. CONCLUSION**

Based on the foregoing analysis, the court concludes that the decision of the Commissioner was based on substantial evidence. Therefore, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 10th day of September, 2019.

s/Marcos E. López  
U.S. Magistrate Judge